UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JGR, INC., ) | |
| ) | Case No. 1:96-CV-01780 |
| Plaintiff, ) | |
| ) | Judge Ann Aldrich |
| v. ) | |
| ) | |
| THOMASVILLE FURNITURE INDUSTRIES, ) | |
| INC., ) | |
| ) | MEMORANDUM AND ORDER |
| Defendant. ) | |
| ) | |

Before the court are a number of post-trial motions: (1) defendant Thomasville Furniture Industries, Inc.'s ("Thomasville") motion for judgment as a matter of law [Docket No. 193]; (2) Thomasville's motion for a new trial [Docket No. 195]; (3) Thomasville's motion for remittitur [Docket No. 194]; and plaintiff JGR, Inc.'s ("JGR") motion to amend judgment [Docket No. 192].  For the following reasons, the court denies Thomasville's post-trial motions and grants in part and denies in part JGR's motion to amend the judgment.

**I.**

In 1996, JGR filed a state court complaint against Thomasville, which removed the action to federal court.  Following the court's grant of summary judgment in favor of Thomasville in 1999 and the reversal and remand by the Sixth Circuit, the case which concerned JGR's breach of contract claim against Thomasville was tried to a jury in February 2002.  On that claim, JGR argued that Thomasville had promised that it would not arrange for any of JGR's competitors to sell Thomasville furniture in competition with JGR unless those competitors maintained a minimum square footage for display of Thomasville products, and that Thomasville had broken that promise by arranging for one of JGR's competitors to sell Thomasville furniture at a location across the street from JGR's store in Mentor, Ohio

without holding that competitor to the minimum square footage requirement.

The jury found in favor of JGR and against Thomasville, awarding zero dollars for lost profits and $1.5 million for lost value of the business to JGR. Thomasville appealed the verdict. The Sixth Circuit affirmed the finding of a breach, but vacated the damages award and remanded to this court. *JGR, Inc. v. Thomasville Furniture Indus.*, 370 F.3d 519 (6th Cir. 2004). On September 5, 2006, following a trial on the issue of damages, JGR was awarded $6,830,000 in damages by a jury for Thomasville's breach of contract. The jury awarded $3,300,000 for "lost profits" damages, and $3,530,000 for "opportunity cost" damages.

## II.

### A.  Motion for Judgment as a Matter of Law and for New Trial

The court may grant judgment as a matter of law against a party on any issue if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). The standard for granting judgment as a matter of law mirrors that for granting summary judgment. The court must consider all the evidence in the record, drawing all reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 149 (2000). Judgment as a matter of law is appropriate only when there is a complete absence of fact to support the verdict, so that no reasonable juror could have found for the non-moving party. *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1078 (6th Cir. 1999); *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993).

Thomasville argues that four separate grounds require a grant of judgment as a matter of law in its favor. First, it argues that JGR is legally precluded from recovering the $3.3 million in "lost profits" damages because the previous jury awarded $0 in lost profits, and JGR did not appeal that portion of

the 2002 verdict. The court, however, previously rejected this argument when it denied Thomasville's motion in limine [Docket No. 164], and Thomasville offers no new argument or case law that would cause the court to reconsider its earlier ruling. Second, Thomasville argues that the evidence JGR presented on the issue of its damages was too speculative under Ohio law to support any award of damages. The court also previously rejected this argument when it denied Thomasville's motions in limine [Docket No. 113, 157]. Thomasville offers no new argument or case law that would cause the court to reconsider its ruling, and the court finds that evidence presented at trial – while not the strongest evidence imaginable – did not fall below the level of competence and certainty required by Ohio law for an award of damages in this case.

Thomasville also raises two other arguments in its motion for judgment as a matter of law. First, it argues that in a case where a business is destroyed, the proper method of calculating damages is determining the lost value of the business, not projecting lost profits, citing *Taylor v. B. Heller & Co.* 364 F.2d 608, 612 (6th Cir. 1966). However, the *Taylor* case makes it clear that both business value and projected lost profits damages are available under Ohio law. *Id.* In this case, JGR was awarded projected lost profits; no authority cited by Thomasville actually suggests that JGR be limited to business value damages. Finally, Thomasville argues that judgment as a matter of law should be granted because JGR's expert offered no testimony on the issue of causation, and that JGR thus failed to prove that the damages projected were in fact caused by Thomasville's contract breach. The court notes that while Mr. Greenwald did not offer any evidence on causation, Mr. Yosowitz did, and the evidence offered by Mr. Yosowitz as to the reasons for and story of JGR's collapse was not so incredible as to constitute a complete absence of fact to support the verdict. Having rejected all four of Thomasville's arguments, the court denies Thomasville's motion for judgment as a matter of law [Docket No. 193].

Federal Rule of Civil Procedure 59(a) alternatively authorizes the Court to grant a new trial. A new trial may be awarded if the verdict is unsupported by the evidence, that is, no reasonable juror could reach that verdict based on the facts and the law. *Moore*, 171 F.3d at 1082. Generally, this standard is met if: (1) the verdict is against the great weight of the evidence; (2) the damages are inappropriate as to the amount; or (3) the trial was influenced by bias or prejudice, or was otherwise unfair to the moving party. *Holmes v. City of Massilon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996).

Thomasville raises five arguments in favor of its motion for a new trial. First, it argues that the verdict was a result of prejudice and/or bias due to references by the court and JGR's counsel to the prior verdict in this case. Second, Thomasville argues that prejudice and/or bias occurred due to reference to the judgment Thomasville obtained against JGR in a separate case. Third, Thomasville argues that the verdict was influenced by prejudice and/or bias as a result of references to Thomasville's "pre-breach" conduct. Fourth, Thomasville protests the references by JGR's counsel to Thomasville's size, wealth, and number of attorneys, as well as other accusations made by JGR's counsel throughout the trial. Finally, Thomasville raises the issue of threats of physical violence made by Mr. Yosowitz, the principal owner of JGR.

At the outset, the court finds that the evidence presented during the course of the trial was such that reasonable jurors could have reached the damages verdict at issue in these motions based on the facts and the law. In other words, while Thomasville's claims of prejudice and bias might be true, there is no evidence before the court indicating that they must be true; the jurors could have (and did) simply find JGR's evidence more persuasive and awarded damages accordingly. While Thomasville's motions in limine limiting references to the prior verdict in this case and to its judgment against JGR in another case were granted, the court finds that the references to those two events did not make the damages trial

-4-

unfair to Thomasville, or infect the jury verdict with prejudice or bias.

As for references to Thomasville's "pre-breach" conduct, the court issues the same precautionary instruction affirmed by the Sixth Circuit in this trial as it did in the last, and therefore finds that a new trial is not warranted by references to Thomasville's "pre-breach" conduct. *JGR*, 370 F.3d at 526-27. Thomasville also argues that references to its "pre-breach" conduct were exacerbated by the court's instruction on proximate cause. The court finds this argument curious, as the language the court used in its proximate cause instruction and complained of by Thomasville was *precisely* the language suggested by Thomasville in its proposed jury instructions [Docket No. 174, at 7].

Thomasville's two remaining arguments concern alleged misconduct by JGR's counsel. To determine whether counsel's conduct warrants a new trial, the court must

> . . . determin[e] whether 'there is a reasonable probability that the verdict of a jury has been influenced' by improper conduct, warranting that the verdict be set aside, a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e. g. whether it is a close case), and the verdict itself.

*City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980). In examining the "totality of the circumstances", the court finds that the nature of the comments by JGR's counsel was less-than-professional, but that their frequency was far from constant. The relevance of the size of Thomasville's trial team to the issues at hand is non-existent, but the comments were far from the focus of the evidence, or of the proceedings in general. The court finds that, while unprofessional, Mr. Karp's comments did not create prejudice such that no reasonable juror could have reached the verdict that was reached in this case.

Finally, Thomasville raises the threats of physical violence made by Mr. Yosowitz during the

-5-

trial. Thomasville does not allege that these threats were made in the presence of the jury, or that they influenced the presentation of evidence or testimony of witnesses in any way. As such, it is difficult to see the prejudice that Mr. Yosowitz's threats caused. However, the court reporter witnessed Mr. Yosowitz threatening Mr. Finger with violence immediately following Mr. Finger's testimony on August 30, and Mr. Yosowitz admitted making such a threat to the court's clerk on that same date. As the court's clerk informed Mr. Yosowitz on that day, such conduct is inexcusable, and JGR's counsel's denial of these events is at best curious. However, despite Mr. Yosowitz's actions, the court finds that no prejudice or bias resulted from them, and thus denies Thomasville's motion for a new trial [Docket No. 195].

### B. Motion for Remittitur/Motion to Amend Judgment

Thomasville's remaining post-trial motion, for remittitur [Docket No. 194] and JGR's motion to amend judgment [Docket No. 192] deal with many of the same issues. In its motion for remittitur, Thomasville seeks reduction or elimination of each of the two parts of the jury's damage award. First, Thomasville argues that since opportunity costs offer the same relief as prejudgment interest, and prejudgment interest is a matter for the court and not the jury, the court should eliminate the $3.53 million "opportunity cost" damages award and award the proper level of prejudgment interest. Thomasville argues that, based on previous rulings by the court, that the proper level is zero. Second, Thomasville argues that lost profits damages awarded by the jury should be reduced since the award is predicated on JGR staying in business from 1992 through 2006, an allegedly highly unlikely proposition, and the contract was one that could be terminated by Thomasville at will and without notice. The latter argument, however, was made to the jury by Thomasville and presumably rejected by the jury, given the size of the lost profits damage award. As noted above, Thomasville has not

provided the court with any reason to set aside the jury's verdict in that regard, so the court denies that portion of Thomasville's motion for remittitur.

JGR argues that prejudgment interest should be awarded in this case, but that because it has calculated an amount of prejudgment interest in excess of the "opportunity costs" damage award, the court should add the balance to the judgment. JGR also seeks an additional award to cancel out the interest owed on the verdict Thomasville obtained in another case against JGR, as well as costs in this action.

JGR cites *Tharo Systems, Inc. v. cab Produkttechnik GmbH & Co.*, a recent unpublished Sixth Circuit case, in arguing that the court must award prejudgment interest to JGR as of the date of the breach, even though the contract at issue in this case did not call for any money to become owed upon breach. 196 Fed. App'x 366, 377-78 (6th Cir. Aug. 24, 2006). While *Tharo* is an unpublished case, and Sixth Circuit Rule 28(g) cautions against relying too heavily upon unpublished opinions, the reasoning is *Tharo* is persuasive, and indicates that the court is bound to award prejudgment interest to JGR under Ohio Rev. Code § 1343.03(A). *Id.* As a result, the court must determine whether the prejudgment interest to be awarded is greater than the $3.53 million in opportunity cost damages awarded, and if not, whether the opportunity cost damage award must be reduced as a result.

Thomasville argues, and the court agrees, that prejudgment interest cannot be calculated as if the entire $3.3 million in lost profits damages became due and payable on November 15, 1992. Even under the most optimistic calculations of prejudgment interest, that would result in JGR receiving interest from 1992 through 2002 for profits that would not have been earned, for example, until 2003. The court accepts Mr. Finger's calculations and notes that, although they are based on a profit projection some $700,000 less than the jury's award, Mr. Finger adjusted that projection to reflect the jury's actual

-7-

award of $3.3 million in lost profits.  The court finds Mr. Finger's calculation to be accurate, and finds that an award of $2,208,149.41 in prejudgment interest tracks both with the proffered interest rates of 10 percent from November 15, 1992 to June 2, 2004; 4 percent from June 2, 2004 to December 31, 2004; 5 percent from January 1, 2005 to December 31, 2005; and 6 percent from January 1, 2006 to September 5, 2006 and with the jury's lost profits award.  Therefore, the only remaining question is whether JGR should receive either the approximately $2.2 million in prejudgment interest, or the $3.53 million in opportunity cost damages awarded by the jury.

Thomasville argues that because the opportunity cost damages serve the same purposes as prejudgment interest – to compensate the plaintiff for the loss of the use of money – the court must vacate the opportunity cost damage award and award prejudgment interest in its place.  However, as the court noted in denying Thomasville's motion in limine, opportunity cost damages are not completely identical with prejudgment interest.  They are a type of consequential damages that may be awarded in breach of contract cases.  For that reason, the court denies Thomasville's request to vacate the opportunity cost damages award.

However, because opportunity cost damages do serve the same purpose as prejudgment interest, any additional award of prejudgment interest would overcompensate JGR.  *Royal Elec. Constr. Corp. v. Ohio St. Univ.*, 73 Ohio St. 3d 110, 116, 652 N.E.2d 687, 692 (1995) (holding that the only question is whether the "aggrieved party [has] been fully compensated").  Therefore, the court awards $2,208,149.41 in prejudgment interest, but finds that the entire amount of prejudgment interest must be set off against the opportunity cost damages award.

The court denies JGR's request for $713,000 in damages to offset the interest owed on the judgment Thomasville obtained against JGR in another case.  In its proposed jury instructions, JGR

-8-

did not seek such damages, nor did it do so in its complaint or in any previous filing. JGR cannot now obtain damages it has never before sought; suggesting that it receive such damages is no different than arguing that the court add on the entire amount of the verdict Thomasville obtained, because JGR would not have had to pay it, absent Thomasville's breach of contract. The court does, however, grant JGR's request for costs under Rule 54(d), as the prevailing party in this litigation.

### III.

For the foregoing reasons, the court denies Thomasville's motions for judgment as a matter of law [Docket No. 193], for a new trial [Docket No. 195], and for remittitur [Docket No. 194]. The court grants in part, and denies in part, JGR's motion to amend the judgment [Docket No. 192]. The judgment is hereby amended to read as follows:

> IT IS ORDERED that plaintiff JGR, Inc. shall recover from defendant Thomasville Furniture Industries, Inc. the sum of $3,300,000 with respect to plaintiff's claim for lost profits damages;
>
> IT IS FURTHER ORDERED that plaintiff shall recover from defendant the sum of $3,530,000 with respect to plaintiff's claim for opportunity cost damages;
>
> IT IS FURTHER ORDERED that plaintiff shall not recover from defendant prejudgment interest in the amount of $2,208,149.41, on the sum awarded to plaintiff for lost profits damages, because that amount of prejudgment interest is completely off-set by the amount received by plaintiff for opportunity cost damages; and
>
> IT IS FURTHER ORDERED that the plaintiff shall recover its costs in this litigation as taxed by the Clerk pursuant to Rule 54(d) of the Federal Rules of Civil Procedure.

The judgment, as amended, is final and appealable.

IT IS SO ORDERED.

                                                /s/Ann Aldrich
                                                ANN ALDRICH
                                                UNITED STATES DISTRICT JUDGE

**Dated: January 26, 2007**